16-3617-cv
*Daniel Penades v. The Republic of Ecuador*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of May, two thousand seventeen.

Present:
> JOHN M. WALKER, JR.,
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> *Circuit Judges.*

_____

DANIEL PENADES,

> *Plaintiff-Appellant*,

v.                                                              16-3617-cv

THE REPUBLIC OF ECUADOR,

> *Defendant-Appellee*.

_____

For Plaintiff-Appellant:          Daniel Penades, *pro se*, Rio de Janeiro, Brazil

For Defendant-Appellee:          Andrew Z. Schwartz, Boston, MA, Peter A. Sullivan, New York, NY, Foley Hoag LLP

Appeal from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Daniel Penades appeals from the September 30, 2016 order of the district court granting a motion to dismiss by Defendant-Appellee Republic of Ecuador ("Ecuador"). Because Ecuador has waived sovereign immunity with respect to the bonds at issue in this case, we have jurisdiction under 28 U.S.C. §§ 1330(a) and 1605(a)(1) and now affirm. In so doing, we assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

In this suit, Penades seeks to recover past-due interest on a bond series Ecuador issued on August 23, 2000, with a principal due date of August 15, 2030 (the "Bonds"). Ecuador allegedly defaulted on the Bonds in 2008, and Penades alleges it has since ceased paying him interest.

We begin, and this case ends, with the text of the controlling indenture agreement (the "Indenture"), which we interpret, under the terms of this Indenture, by applying New York contract law. *See In re AMR Corp.*, 730 F.3d 88, 98 (2d Cir. 2013). The rights of individual bondholders to sue on the Bonds are largely governed by Section 4.5 and 4.6 of the Indenture. Section 4.5, the Indenture's "no action clause," provides that "[e]xcept as provided in Section 4.6," all litigation under the Indenture must proceed through the Trustee unless the bondholder wishing to sue has met certain conditions.[1] Dist. Ct. ECF No. 2, Ex. 1, at 50. Section 4.6 of the Indenture, in turn, provides:

> Notwithstanding any other provision in this Indenture, each [b]ondholder shall
> have the right, which is absolute and unconditional, to receive payment of the

---

[1] Penades did not provide any persuasive grounds in the district court in support of the contention that he has satisfied the conditions of Section 4.5, and we decline to consider arguments he makes to the contrary that are raised for the first time on appeal.

principal of and interest on . . . its [b]onds on the stated maturity expressed in such [b]onds and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such [b]ondholder.

*Id.* at 51.

On appeal, Penades contends that the term "stated maturity" in Section 4.6 should be construed as permitting bondholders to sue not only on August 15, 2030, when the obligation as a whole comes due, but also to recover interest if Ecuador ever misses an interest payment on the bonds. In other words, Penades contends that "stated maturity" is capacious enough to include not only the due date of the bond principal, but also each of the interest payment dates over the life of the bond. We disagree, and hold that, under the terms of this Indenture, a bondholder may sue under Section 4.6 only when the entirety of the bond comes due.

As in all contract interpretation cases, "[t]he words and phrases used by the parties must . . . be given their plain meaning." *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (1996). Though the Indenture itself does not define the term "stated maturity," it does provide several indications as to its meaning. First, in using the singular "stated maturity," rather than the plural "stated maturities," Section 4.6 limits a bondholder's recourse to any time after the single date when the bond itself matures rather than the several dates at which interest payments come due. Moreover, as the district court noted, the Indenture elsewhere uses the term "maturity" specifically to describe the date when the principal on the bond comes due. Among others, Section 3.4 of the Indenture requires Ecuador to make payments "at least one Business Day prior to each interest payment date or the maturity date (each, a 'Payment Date') of the Bonds." Dist. Ct. ECF No. 2, Ex. 1, at 46. In distinguishing between the several dates when interest payments come due and the single date when the bond matures, and describing only the

3

latter as the date of the bond's "maturity," this provision cuts against Penades' argument that "stated maturity" refers interchangeably to both.

Further confirmation of this interpretation comes from two dictionaries, which demonstrate that the term "stated maturity" is generally used to refer to the date on which the bond is due in full. Thomas P. Fitch, DICTIONARY OF BANKING TERMS 433 (6th ed. 2012) (defining "stated maturity" as the "latest date on which holders of . . . bonds will be paid in full"); Peter Moles & Nicholas Terry, THE HANDBOOK OF INTERNATIONAL FINANCIAL TERMS 516 (1997) (defining "stated maturity" as the "last date on which a debt obligation can be still outstanding").

Penades contends that Section 7.2 of the Indenture supports the contrary view. Section 7.2 bars supplementing the Indenture absent consent of the bondholders, including where the proposed supplement would "change the stated maturity of the principal of or interest on any . . . Bond." Dist. Ct. ECF No. 2, Ex. 2, at 11. Penades argues that "stated maturity" in this clause should be read to modify both "principal" and "interest," demonstrating that the contract uses the term "stated maturity" to refer to dates on which interest payments are due. But this misunderstands the syntax of the clause which, by placing a preposition after "principal," separates the two sub-clauses in the provision. As the district court recognized, the provision is properly read as differentiating between "the stated maturity of the principal of" a Bond and the "interest on" a Bond, not as describing the "stated maturity" dates of interest payments made over the life of the Bonds.[2]

---

[2] Penades points to Section 4.2 of the Indenture which uses the term "maturity" in describing the installment dates of interest payments under the Bond. But the fact that the Indenture, in one provision, uses "maturity" in reference to interest payments does not counter the substantial other evidence that the "stated maturity" of the Bond refers to the single maturity date stated on the face of the instrument itself, August 15, 2030. And Penades' citations to the contractual definitions of "stated maturity" in *other* contracts cannot modify the plain meaning of "stated maturity" as it appears in this contract.

In light of the above, we conclude that Section 4.6 of the Indenture only permits an individual bondholder to sue once Ecuador's obligations under the Indenture are due and payable in full, which will not be the case until August 15, 2030. Penades' suit, brought well before that date, was therefore properly dismissed by the district court.[3]

We have considered Penades' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] Penades also argues that the district court erred in its order denying him leave to file a sur-reply. Penades' failure to appeal from this order is not jurisdictional. *See Elliott v. City of Hartford*, 823 F.3d 170, 173 (2d Cir. 2016) (per curiam) ("[W]e read a *pro se* appellant's appeal from an order closing the case as constituting an appeal from all prior orders."). However, we find no abuse of discretion in the district court's refusal to grant Penades' motion, as Penades failed to point the district court to any substantial reason that Ecuador's reply brief on the motion to dismiss warranted the proposed sur-reply.